71 P.3d 1078

STATE of Idaho, Plaintiff–Respondent,

v.

David A. PALMER, Defendant–Appellant.

No. 27170.

Court of Appeals of Idaho.

May 14, 2003.

## I.

### FACTS AND PROCEDURE

In June 1998, the Shoshone County sheriff's department began working with an informant who had previously expressed concern about the methamphetamine problem in the county. Shortly thereafter, officers received a phone call from the informant. The informant reported that Palmer and another individual had requested that the informant allow them to set up a methamphetamine laboratory on property occupied by the informant and owned by the informant's parents. Officers suggested that the informant allow the two individuals to do so and advised the informant that law enforcement officers would visit the property. A search warrant was issued. At approximately 1:30 the next morning, officers executed the warrant and found evidence of methamphetamine manufacturing, including several containers of liquid with detectable amounts of methamphetamine. Palmer was arrested.

Initially, Palmer was charged with conspiracy to traffic in methamphetamine. The district court denied Palmer's motion to suppress the evidence against him. A jury subsequently found Palmer guilty of a different charge, trafficking in methamphetamine, and found that Palmer possessed or manufactured in excess of 400 grams. I.C. § 37–2732B(a)(3)(C) (1997). Recognizing that it had submitted to the jury a crime that was never charged, the district court ordered a new trial. The state amended the charge to trafficking in methamphetamine, and a preliminary hearing on the new charge was held.

During the second trial, the state again amended the information, changing the amount of methamphetamine or substance containing methamphetamine from 28 grams or more to an amount exceeding 400 grams. That trial ended when the district court declared a mistrial because of juror misconduct.

Palmer was tried a third time and was found guilty. The district court sentenced Palmer to a fifteen-year term of imprison-

Molly J. Huskey, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant. Paul S. Sonenberg argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

David A. Palmer appeals from his judgment of conviction for trafficking in methamphetamine.[1] We vacate and remand.

1. Palmer also appeals from the district court's order denying his motion for a new trial. Because we vacate Palmer's judgment of conviction on other grounds, we will not address Palmer's appeal from the district court's denial of his motion for new trial.

ment, with ten years fixed, and imposed a fine of $25,000. Palmer subsequently moved for a new trial, claiming that the prosecution had withheld exculpatory evidence. The district court denied Palmer's motion.

On appeal, Palmer raises numerous issues. Palmer argues that the district court erred when it denied his motion to suppress evidence. Additionally, Palmer asserts that the district court's failure to hold a preliminary hearing between the second and third trials deprived the district court of jurisdiction, that the informations failed to properly advise Palmer of the charges against him, that the district court improperly instructed the jury, that the evidence was insufficient for the jury to find Palmer guilty of trafficking in excess of 400 grams of methamphetamine, and that the accumulation of errors in his case warrants a new trial.

## II.

## ANALYSIS

### A. Motion to Suppress

Palmer argues that the district court improperly ruled that Palmer lacked standing to bring an objection to the search. Palmer asserts that he had standing because he was a possessor, a renter, or an overnight guest on the informant's property.

▉ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

▉ In this case, the parties dispute whether Palmer had standing to challenge the search warrant. Fourth Amendment rights are personal rights which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–25, 58 L.Ed.2d 387, 394–95 (1978). A search may be challenged when a personal interest under the Fourth Amendment is asserted and a legitimate expectation of privacy is shown to exist in the area searched or the items

seized. *State v. Brown*, 113 Idaho 480, 483–84, 745 P.2d 1101, 1104–05 (Ct.App.1987). In determining whether an individual has standing to challenge a search, the question is whether governmental officials violated any legitimate expectation of privacy held by that individual. *See Rawlings v. Kentucky*, 448 U.S. 98, 106, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633, 642 (1980). The defendant bears the burden of proving a legitimate privacy interest. *Id.* at 104, 100 S.Ct. at 2561, 65 L.Ed.2d at 641.

In this case, Palmer asserts that he had a legitimate expectation of privacy akin to that of a renter or an overnight guest. The United States Supreme Court has held that in some circumstances a person may have a legitimate expectation of privacy in the house of another. *See Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *see also State v. Vasquez*, 129 Idaho 129, 922 P.2d 426 (Ct.App.1996). In *Olson*, the Court held that an overnight guest in the house of another carried an expectation of privacy that is protected by the Fourth Amendment. The Court concluded that an overnight guest stays in another's home because it provides privacy and security, where the guest and his possessions will not be disturbed by anyone except those the host allows inside. The Court further noted that people are most vulnerable when they are asleep because they cannot monitor their own safety nor the security of their belongings. For those reasons, the Court indicated, people seek another private place to sleep when they cannot sleep in their own homes.

On the other hand, the Supreme Court has held that one who is merely present with the consent of the householder may not claim the protections of the Fourth Amendment. *See Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). In *Carter*, police looked through a closed blind inside an apartment window and observed three individuals placing white powder into baggies. Two of the three individuals were visiting from a distant city, and the other individual leased and occupied the apartment. With the lessee's permission, the two visitors had been in the apartment for approximately two and one-half hours packaging cocaine. In

return, the lessee was to receive some of the drug. After leaving the apartment, the two visitors were arrested and charged with committing drug crimes. Both moved to suppress the evidence, claiming that the initial police observation of their packaging activities constituted an unreasonable search. On appeal, the Supreme Court again recognized that overnight guests may claim the protection of the Fourth Amendment. However, the Court noted that the defendants were in the apartment essentially for a business transaction, had no other purpose for being there, had no previous relationship with the lessee, and were there for only a matter of hours. The Court held that the defendants were not overnight guests, lacked a legitimate expectation of privacy in the apartment and, therefore, could not successfully assert a Fourth Amendment challenge to the police search.

■ The facts of this case are similar to the circumstances in *Carter*. Before Palmer's arrest, Palmer had a limited relationship with the informant. He had only known the informant for approximately one week, and their association centered on methamphetamine. Within a day or two after first meeting, Palmer manufactured methamphetamine on the informant's property. The informant testified that he had called Palmer by telephone on several occasions during the week to further his work with the sheriff's department. This also appears to be the reason Palmer was allowed to visit the informant's house on other occasions during the week they had known each other.

On the evening prior to the arrest, Palmer and another individual went to the informant's house and requested that they be allowed to set up a methamphetamine laboratory on the informant's property. In return, the informant was to receive some of the methamphetamine. After receiving permission to set up the lab, Palmer left to gather the equipment and materials he needed to manufacture the drug. While Palmer was away, the informant called the sheriff's department to report Palmer's plans. Later, during Palmer's manufacturing activities on the informant's property, law enforcement

officers conducted a search. Palmer was arrested.

These facts show that Palmer's purpose for being at the informant's property was to manufacture drugs. This conclusion is further supported by testimony from the informant that Palmer did not ask to stay the night; did not bring bedding, clothing, or toiletries; was never offered a place to sleep; and was only expected to stay a few hours. The record does not indicate that Palmer intended to sleep at the informant's house or do anything other than manufacture methamphetamine. Palmer's own testimony showed that he had no intent to stay overnight, let alone sleep overnight at the informant's property. On cross-examination, Palmer testified that if the police had not arrived around 1:30 a.m., he would have been home by 2:00 a.m. or earlier. Under these circumstances, Palmer was not an overnight guest, nor does the evidence indicate that the parties intended any "rental" arrangement. Therefore, Palmer did not meet his burden to prove a legitimate expectation of privacy, and the district court correctly found he lacked standing to challenge the search under the Fourth Amendment.

Palmer also contends that, even if he did not have standing to challenge the search under the United States Constitution, the Idaho Constitution should be interpreted to grant automatic standing to do so. Although Palmer's motion to suppress cited the Idaho Constitution, the record is devoid of any argument made to the district court based on its provisions. Therefore, we will not consider a separate state constitutional argument on appeal. Because Palmer lacked standing to challenge the search, we need not address Palmer's other objections to the search.

## B. Jurisdiction

Prior to resting at Palmer's second trial, the state moved to amend the information to allege that Palmer knowingly manufactured 400 grams or more of methamphetamine rather than 28 grams as originally charged. The state's motion to amend was granted without objection from Palmer. No preliminary hearing was held in relation to the second amended information.

On appeal, Palmer claims that the district court did not have jurisdiction over his third trial because the second amended information charged a greater or different offense for which no preliminary hearing was held. Alternatively, Palmer contends that the district court was without jurisdiction because the second amended information failed to assert specific facts constituting the offense with which he was charged.

### 1. Greater or different offense

■ Article I, Section 8 of the Idaho Constitution provides that no person shall be held to answer for any criminal offense unless on presentment or indictment of a grand jury or on information of the prosecutor after commitment by a magistrate. Where an information is filed or subsequently amended charging a defendant with a crime of a greater degree or of a different nature than that for which he or she was held by the committing magistrate, the defendant is denied his or her constitutional and statutory right to a preliminary hearing and the trial court is consequently without jurisdiction. *See State v. McKeehan,* 91 Idaho 808, 817, 430 P.2d 886, 895 (1967); *see also State v. O'Neill,* 118 Idaho 244, 248, 796 P.2d 121, 125 (1990).

■ In order to resolve the issue raised by Palmer, we must examine the language of the statute under which Palmer was charged. The version of I.C. § 37–2732B(a)(3) in effect at the time of Palmer's offense provided, in relevant part: [2]

Any person who knowingly manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, twenty-eight (28) grams or more of methamphetamine or of any mixture or substance containing a detectable amount of methamphetamine is guilty of a felony, which felony shall be known as "trafficking in methamphetamine." If the quantity involved:

(A) is twenty-eight (28) grams or more, but less than two hundred (200) grams, such person shall be sentenced

to a mandatory minimum fixed term of imprisonment of three (3) years and fined not less than ten thousand dollars ($10,000);

(B) is two hundred (200) grams or more, but less than four hundred (400) grams, such person shall be sentenced to a mandatory minimum fixed term of imprisonment of five (5) years and fined not less than fifteen thousand dollars ($15,000);

(C) is four hundred (400) grams or more, such person shall be sentenced to a mandatory minimum fixed term of imprisonment of ten (10) years and fined not less than twenty-five thousand dollars ($25,000).

1995 Idaho Sess. Laws ch. 103, § 1. Upon review of the language of the statute, this Court concludes that the former version of I.C. § 37–2732B(a)(3) created a single offense of trafficking in methamphetamine while requiring varying mandatory minimum sentences depending on the amount of methamphetamine involved.

Our conclusion is consistent with this Court's interpretation of I.C. § 37–2732B(a)(1), which prescribes the offense of and penalties for trafficking in marijuana and which is drafted in substantially the same wording as the former version of subsection (a)(3). The relevant portions of subsection (a)(1) provide:

Except as authorized in this chapter, and notwithstanding the provisions of section 37–2732, Idaho Code:

(1) Any person who knowingly manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, one (1) pound of marijuana or more, or twenty-five (25) marijuana plants or more, as defined in section 37–2701, Idaho Code, is guilty of a felony, which felony shall be known as "trafficking in marijuana." If the quantity of marijuana involved:

---

**2.** In 1999, I.C. § 37–2732B was amended, which resulted in deletion of the varying mandatory minimum sentencing schemes in subsection (a)(3) and the separation of the offenses of manu-

facturing and delivery/possession into different subsections. *See* 1999 Idaho Sess. Laws ch. 143, § 2.

(A) Is one (1) pound or more, but less than five (5) pounds, or consists of twenty-five (25) marijuana plants or more but fewer than fifty (50) marijuana plants, regardless of the size or weight of the plants, such person shall be sentenced to a mandatory minimum fixed term of imprisonment of one (1) year and fined not less than five thousand dollars ($5,000);

(B) Is five (5) pounds or more, but less than twenty-five (25) pounds, or consists of fifty (50) marijuana plants or more but fewer than one hundred (100) marijuana plants, regardless of the size or weight of the plants, such person shall be sentenced to a mandatory minimum fixed term of imprisonment of three (3) years and fined not less than ten thousand dollars ($10,-000);

(C) Is twenty-five (25) pounds or more, or consists of one hundred (100) marijuana plants or more, regardless of the size or weight of the plants, such person shall be sentenced to a mandatory minimum fixed term of imprisonment of five (5) years and fined not less than fifteen thousand dollars ($15,000).

In *State v. Schumacher*, 136 Idaho 509, 520, 37 P.3d 6, 17 (Ct.App.2001), this Court determined that subsection (a)(1) creates a single offense of trafficking in marijuana but provides varying mandatory minimum sentences depending on the quantity of marijuana involved.

By parity of reasoning, therefore, we conclude that the former version of I.C. § 37–2732B(a)(3) defined a single offense of trafficking in methamphetamine while providing for varying sentences depending on the amount of methamphetamine involved. When the second amended information was filed increasing the amount of methamphetamine from 28 grams to 400 grams, it did not charge a greater or different offense than the offense charged in the first amended information but merely increased Palmer's potential mandatory minimum sentence. Because the offense charged was the same, it was unnecessary for a preliminary hearing to be conducted on the basis of the amendment.[3]

Accordingly, this Court concludes that the district court was not deprived of jurisdiction over Palmer's third trial, and Palmer's argument to the contrary is without merit.

**2. Sufficiency of the information**

■ Next, we address Palmer's alternative claim that the district court did not have jurisdiction because the second amended information lacked specific facts constituting the offense with which he was charged. Whether an information conforms to the requirements of law is a question over which we exercise free review. *State v. Robran*, 119 Idaho 285, 287, 805 P.2d 491, 493 (Ct.App. 1991).

■ The information or indictment is the jurisdictional instrument upon which a defendant stands trial. *State v. Izzard*, 136 Idaho 124, 127, 29 P.3d 960, 963 (Ct.App. 2001). A trial court lacks jurisdiction over a criminal defendant if no information or indictment is filed by the state. *Id.* Additionally, a trial court may lack jurisdiction over a defendant if an otherwise filed indictment or information contains jurisdictional defects. *Id.* A failure to state facts essential to establish the offense charged in an information is a defect which deprives a trial court of jurisdiction over a defendant. *Id.* In the present case, Palmer did not challenge the sufficiency of the second amended information prior to his third trial. In evaluating the sufficiency of an indictment or information, some latitude is given depending upon the timing in the proceeding when the challenge to the sufficiency of the document is raised. *State v. Leach*, 126 Idaho 977, 978, 895 P.2d 578, 579 (Ct.App.1995). When reviewing the sufficiency of a charging instrument not challenged prior to trial, this Court will construe the instrument liberally and in favor of its validity. *Id.* at 979, 895 P.2d at 580.

■ The second amended information charging Palmer with trafficking in methamphetamine alleged:

That the defendant, David A. Palmer, on or about the 21st day of June, 1998, in the County of Shoshone, State of Idaho,

---

**3.** Palmer does not contend that the evidence at trial varied substantially from that proffered at

the preliminary hearing concerning the quantity involved.

did commit the crime of Trafficking in Methamphetamine by he, the said defendant, knowingly manufacturing or possessing four hundred (400) grams of methamphetamine or of any mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

The information described with certainty the date and place of Palmer's alleged offense and provided a plain and concise statement of the facts constituting Palmer's offense. The facts essential to establishing the offense of trafficking in methamphetamine by manufacture were that on or about a specific date, in the state of Idaho, Palmer knowingly manufactured methamphetamine. *See* I.C. § 37-2732B(a)(3); I.C.J.I. 405. Each of these essential facts was alleged in the information. The state was not required to allege evidence nor disclose the proof upon which it relied to establish the charge. *See McKeehan,* 91 Idaho at 815, 430 P.2d at 893. Although the information may have been drafted more precisely, this Court concludes that the information sufficiently set forth the facts essential to the offense with which Palmer was charged and that, therefore, jurisdiction was conferred upon the district court.

■ Palmer has also failed to show that he was prejudiced by a lack of notice of the nature of the charges. His claim that the amended information left him unprepared for his defense is unpersuasive. Not only did he receive two preliminary hearings before he was tried for the third time, Palmer received two previous trials, which specifically detailed the conduct on which the charge against him was based. We hold that Palmer has failed to show that the defects complained of deprived the district court of jurisdiction.

## C. Instruction Permitting Premature Discussion of Case

Prior to opening statements at Palmer's third trial, the district court gave the following instruction:

You may discuss this case among yourselves during the progress of the trial provided you understand the following conditions. No. 1, all discussions must take place in the jury room; 2, all jurors and alternates must be present during such discussions; and, 3, you reach no final decisions on any contested questions, remembering that you are only making temporary assessments as the case progresses. You should only reach your final decision after you have heard all of the evidence, my final instructions, and the final arguments, and it is submitted to you for your final decision.

No objection was made to this instruction. On appeal, Palmer contends that the district court's instruction violated his constitutional right to a fair trial and I.C. § 19-2127.[4]

■ In a recent opinion, the Idaho Supreme Court addressed a challenge to the particular instruction at issue in this case. *See State v. McLeskey,* Docket No. 29216, 138 Idaho 691, 69 P.3d 111, 2003 WL 1923318 (Apr. 24, 2003). In *McLeskey,* the Court determined that the instruction clearly violated I.C. § 19-2127 and was, therefore, error. The Court further determined that, although the jurors' conduct in deliberating throughout trial could not be characterized as misconduct because they were presumed to be following the district court's erroneous instruction, the proper standard to be applied in deciding whether the error was harmless was the standard used in juror misconduct cases. The issue thus framed by the Court was whether prejudice to the defendant's right to a fair trial reasonably could have occurred as a result of the error. After considering the risks involved in permitting jurors in a criminal case to discuss the case prior to its final submission, the Court held that prejudice reasonably could have occurred. Accordingly, the defendant's judgment of conviction was vacated.

---

**4.** Idaho Code Section 19-2127 states:
The jury must also, at each adjournment of the court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves or with anyone else on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them.

Based on the Court's decision in *McLeskey,* we hold that the instruction given by the district court in this case was also error and that the error was not harmless. Therefore, we vacate Palmer's judgment of conviction and sentence for trafficking in methamphetamine. Because of our holding on this issue, we do not address Palmer's claim that the district court erred in denying his motion for a new trial, nor his argument regarding cumulative error. We note, however, that the issue raised by Palmer concerning the district court's comment to the jury that most defendants charged with a crime are guilty was also asserted and considered by the Supreme Court in *McLeskey.* Although the Court found it unnecessary to decide whether the district court's statement was reversible error, the Court cautioned that such a statement poses a substantial risk that the defendant would be denied a fair trial.

## D. Final Jury Instructions Regarding the "Knowingly" Element

For guidance on remand, we also address Palmer's assertion that the district court erred by failing to properly instruct the jury in the elements instruction that, in order to find Palmer guilty of trafficking in methamphetamine, it must find that the methamphetamine was manufactured "knowingly." In response, the state argues that the jury instructions, taken as a whole, included all the necessary elements of trafficking in methamphetamine.

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993). The failure to object to an instruction at trial in a criminal case does not constitute a waiver of any objection to the instruction on appeal. *State v. Smith,* 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990); *State v. Rivas,* 129 Idaho 20, 23, 921 P.2d 197, 200 (Ct.App.1996).

The jury instructions in this case correctly defined the crime with which Palmer was charged, trafficking in methamphetamine, as knowingly manufacturing or knowingly possessing the requisite amount of methamphetamine. However, the jury verdict form did not ask the jury whether Palmer was guilty of trafficking in methamphetamine. Instead, the jury was asked whether he was guilty of *manufacturing* methamphetamine. As shown by the completed verdict form and by the record, manufacturing methamphetamine was the underlying criminal act of which the jury found Palmer guilty. The verdict form, in combination with the elements jury instruction for manufacturing—Instruction No. 10—failed to require a finding by the jury that the manufacturing was done knowingly. This was error. Therefore, on remand, the district court should properly instruct the jury so as to require a finding that Palmer knowingly manufactured methamphetamine.

## E. Sufficiency of the Evidence

Palmer acknowledges that the state presented evidence showing that Palmer manufactured or possessed over 2500 grams of a liquid that contained methamphetamine. Palmer argues that the evidence was insufficient to prove him guilty of trafficking in methamphetamine in excess of 400 grams because the state presented evidence of only the quantity of the liquid containing methamphetamine rather than the amount of actual methamphetamine in the liquid. Palmer argues that the quantity required to support his conviction must be determined by first separating the methamphetamine from the mixture or substance in which it is found and then measuring only the actual amount of methamphetamine, while excluding the waste or by-products. The state argues that, under the plain language of the statute, the mixture or substance containing the methamphetamine may be included in the measurement of the quantity required for a conviction or increased sentence under the statute.

This Court exercises free review over the application and construction of statutes. *State v. Schumacher,* 131 Idaho 484,

485, 959 P.2d 465, 466 (Ct.App.1998). It is a basic rule of statutory construction that, unless the result is palpably absurd, we must assume that the legislature meant what is clearly stated in the statute. *State v. Ayala*, 129 Idaho 911, 917, 935 P.2d 174, 180 (Ct. App.1996). When analyzing the language and application of a statute, the words must be given their plain, usual and ordinary meaning. *Id.* Where the language of the statute is unambiguous, we must give effect to the clearly expressed intent of the legislature. *Id.* We are required to give effect to every word and clause of a statute. *State v. Rivera*, 131 Idaho 8, 10, 951 P.2d 528, 530 (Ct.App.1998). However, it is a well-established rule that an ambiguous criminal statute must be construed in favor of the accused. *Id.*

Idaho Code Section 37–2732B (1997) defined the crime of trafficking in various controlled substances. The statute also specifically provided mandatory sentences for those crimes. The level of punishment for trafficking was based upon the "quantity." At the time Palmer was charged, Section 37–2732B(a)(3) provided:

> Any person who knowingly manufactures, delivers or brings into this state, or who is knowingly in actual or constructive possession of, *twenty-eight (28) grams or more of methamphetamine or of any mixture or substance containing a detectable amount of methamphetamine* is guilty of a felony, which shall be known as "trafficking in methamphetamine." If the quantity involved:
>
> . . . .
>
> (C) is four hundred (400) grams or more, such person shall be sentenced to a mandatory minimum fixed term of imprisonment of ten (10) years and fined not less than twenty-five thousand dollars ($25,-000).

I.C. § 37–2732B(a)(3)(C) (1997) (emphasis added).

The statute is unambiguous in its prohibition against trafficking in a specified quantity of methamphetamine or mixture or substance containing methamphetamine—that quantity being twenty-eight grams or more. A plain reading of the statute shows that "twenty-eight (28) grams or more" refers to "of methamphetamine" and "of any mixture or substance containing a detectable amount of methamphetamine." Furthermore, "the quantity involved" refers to "of methamphetamine" and "of any mixture or substance containing a detectable amount of methamphetamine" in the previous sentence. Thus, the state's evidence showing that Palmer manufactured or possessed over 2500 grams of a substance that contained methamphetamine was sufficient to support the jury's finding that Palmer violated I.C. § 37–2732B(a)(3)(C) by manufacturing or possessing 400 grams or more of a substance containing a detectable amount of methamphetamine.

## III.

## CONCLUSION

Palmer was not a possessor, renter, or an overnight guest on the property where his manufacturing activities took place, and lacked standing to challenge the search in this case. No error was committed when Palmer went to trial for a third time without receiving a preliminary hearing on the amended information. The amended information did not charge a crime of greater degree or of a different nature than charged in the previous informations for which Palmer was given a preliminary hearing. Additionally, the information contained the facts necessary to support the district court's jurisdiction to try the case. The jury instruction permitting the jury to prematurely discuss the case amongst its members was given in error. On this basis, Palmer's judgment of conviction must be vacated.

For guidance on remand, the instructions given to the jury regarding the elements of the crime with which Palmer was charged lacked sufficient instruction to the jury that it must find that the methamphetamine was manufactured knowingly. As to the sufficiency of the evidence, the state's evidence showing that Palmer manufactured or possessed over 2500 grams of a substance that contained methamphetamine was sufficient to support the jury's finding that Palmer manufactured methamphetamine in excess of 400

grams. Accordingly, Palmer's judgment of conviction for trafficking in methamphetamine is vacated and the case is remanded.

Chief Judge LANSING and Judge GUTIERREZ concur.