180 P.3d 511

**Scott Lee LINT, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 33702.**

Court of Appeals of Idaho.

March 6, 2008.

474

Scott Lee Lint, St. Anthony, pro se.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Scott Lee Lint appeals from the district court's order summarily dismissing his application for post-conviction relief. Because we conclude that the district court should have held an evidentiary hearing on some of Lint's claims, we affirm in part, reverse in part, and remand.

## I.

### FACTS AND PROCEDURE

Lint pled guilty to manufacturing a controlled substance, methamphetamine. I.C. § 37–2732(a)(1)(A). The district court sentenced Lint to a unified term of ten years, with five years determinate. Lint filed an I.C.R. 35 motion for reduction of sentence, which the district court denied. Lint appealed, contending that the district court abused its discretion by imposing an excessive sentence and by denying his Rule 35 motion. In an unpublished opinion, this Court affirmed Lint's sentence and denial of his Rule 35 motion. *State v. Lint*, Docket No. 31218 (Ct.App. Aug. 3, 2005).

Lint, acting pro se, filed a verified application for post-conviction relief. Lint's application set forth claims that his counsel provided ineffective assistance by failing to file a motion to compel discovery, failing to file a motion to suppress evidence, and coercing Lint to plead guilty by advising him that the state had enough evidence to convict him. The application also set forth a claim that the state violated Lint's right against unreasonable searches and seizures. Additionally, Lint's application set forth claims that the state violated his right to due process by breaking the chain of custody of the evidence, failing to send the evidence to the state crime lab, and failing to respond to his discovery request.[1] Lint attached to his application two police reports and a discovery

request from the underlying criminal proceedings. Lint also filed an affidavit in support of his application approximately three weeks later.

The first police report indicates that an officer investigated a call regarding an abandoned vehicle and determined from the license plate number that the vehicle belonged to Lint. The officer then noticed footprints in the snow, leading from Lint's vehicle to a nearby wooden shed located behind a private residence. The officer contacted the person who resided on the property containing the residence and the shed. The resident stated that Lint worked on the resident's automobiles but should not have been on the property for any reason that night. With the resident's permission to "check the property," the officer proceeded to the shed with the assistance of the lessee's thirteen-year-old son. The officer could see that the light was turned on in the shed and he yelled Lint's name. The officer advised Lint to exit the shed, heard "shuffling" and "banging" noises, and again ordered Lint to exit the shed. The officer tried to open the door to the shed but it was locked. Shortly thereafter, Lint exited the shed and indicated that he was working on a motorcycle in the shed but had no answer when the officer asked him why he had parked in the driveway next door to the property containing the shed. The officer entered the shed, smelled a strong chemical odor, and discovered items used to manufacture methamphetamine. The officer arrested Lint and secured the shed until police could obtain a search warrant.

A report by a second officer who conducted a further investigation indicates that Lint was a friend of the resident of the property, and Lint was permitted to keep some of his belongings in the shed. The resident informed the second officer that she had not been in the shed in over one year and that Lint kept a lock on the door to the shed but normally checked in with the resident when he arrived on the property. In Lint's affidavit, Lint averred that he asked his counsel to

---

1. Lint also filed a motion requesting appointment of post-conviction counsel. The district court denied Lint's request for counsel after pro-

viding Lint with notice of the court's reasons for the denial.

file a motion to suppress the evidence found in the shed, but counsel informed him that there were no grounds to suppress the evidence. Lint further averred that he had a "verbal contract" with the lessee of the property to "occupy" the shed. Lint also averred that he would not have pled guilty if he had known that the state never responded to his discovery request and had no evidence to convict him. According to Lint's affidavit, however, Lint's counsel coerced him to plead guilty by telling him that the state had enough evidence to convict him.

The state filed a motion for summary dismissal of Lint's application and filed an affidavit sworn by Lint's counsel. Counsel averred that he discussed the possibility of filing a motion to suppress with a senior attorney at the public defender's office after reviewing the police reports and the additional evidence provided by the state. According to counsel's affidavit, Lint never told him that the lessee of the property had rented the shed to Lint in exchange for Lint's services. Counsel averred that Lint made the decision to enter into the plea agreement after counsel discussed with Lint the possibility of filing a motion to suppress. The district court issued a notice of intent to dismiss Lint's application. Lint filed a response to both the state's motion to dismiss and the district court's notice of intent to dismiss. The district court then summarily dismissed Lint's application, relying on the reasoning set forth in the notice of intent to dismiss. Lint appeals.

## II.

### STANDARD OF REVIEW

An application for post-conviction relief initiates a proceeding that is civil in nature. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State,* 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State,* 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct.App.1992). Like a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19–4907; *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990).

An application for post-conviction relief differs from a complaint in an ordinary civil action. An application must contain much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant, and affidavits, records or other evidence supporting its allegations must be attached, or the application must state why such supporting evidence is not included with the application. I.C. § 19–4903. In other words, the application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.

■ Idaho Code Section 19–4906 authorizes summary dismissal of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal of an application pursuant to I.C. § 19–4906 is the procedural equivalent of summary judgment under I.R.C.P. 56. Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State,* 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App.1991); *Hoover v. State,* 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct. App.1988); *Ramirez v. State,* 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct.App.1987). Summary dismissal of an application for post-conviction relief may be appropriate, however, even where the state does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994); *Baruth v. Gardner,* 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct.App.1986).

■ On review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of fact exists based on the pleadings, depositions, and admissions to-

gether with any affidavits on file; moreover, the court liberally construes the facts and reasonable inferences in favor of the nonmoving party. *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App.1993).

## III.

## ANALYSIS

### A. Due Process Claims

■■■ Lint set forth claims in his application that the state violated his right to due process by breaking the chain of custody of the evidence seized from the shed, failing to send the evidence to the state crime lab, and failing to respond to his discovery request. The district court ruled that these claims were unsupported by admissible evidence and were waived by Lint's valid guilty plea.

We conclude that the district court properly dismissed these claims on the basis that they were unsupported by admissible evidence. A conclusory allegation, unsubstantiated by any fact, is insufficient to entitle a petitioner to an evidentiary hearing. *Nielson v. State*, 121 Idaho 779, 780, 828 P.2d 342, 343 (Ct.App.1992); *King v. State*, 114 Idaho 442, 446, 757 P.2d 705, 709 (Ct.App. 1988). Lint did not aver how the evidence was affected when the state allegedly broke the chain of custody or what would have been revealed by a test of the evidence at the state crime lab. Lint did not aver that the evidence would have ultimately proven to be something other than ingredients commonly used to manufacture methamphetamine. Additionally, Lint did not demonstrate what items the state failed to provide in response to the discovery request. Lint's due process claims were therefore properly dismissed without an evidentiary hearing on the basis that they were conclusory allegations, unsubstantiated by any fact.

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924–25, 828 P.2d 1323, 1329–30 (Ct.App.1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674, 693–94 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). Where, as here, the defendant was convicted upon a guilty plea, to satisfy the prejudice element, the claimant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct.App.2006). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App.1994).

### 1. Failure to file motion to compel discovery

■■■ Lint claims that the district court erred in summarily dismissing his claim that counsel provided ineffective assistance for failing to file a motion to compel discovery. The district court ruled that there was no reason to file a motion to compel discovery because the information requested was provided by the state.

■■■ In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Boman v. State*, 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct.App.1996). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the

*Strickland* test. *Id.* Counsel averred that he discussed with Lint the police reports and all additional evidence provided by the state. Lint has not demonstrated what evidence was requested in the discovery request but not turned over by the state. Lint did not demonstrate that counsel had any indication that the state withheld evidence or that a motion to compel discovery would have uncovered additional evidence. Lint did not, therefore, raise a genuine issue of material fact as to whether counsel provided deficient performance by failing to file a motion to compel discovery, and the district court did not err in dismissing this claim.

### 2. Failure to file motion to suppress

■ Lint asserts that the district court erred in summarily dismissing his claim that his counsel provided ineffective assistance by failing to file a motion to suppress evidence found as a result of the officer's initial entry into the shed. In support of this claim, Lint averred that counsel advised him that there were no grounds to suppress the evidence. Counsel averred in the affidavit filed by the state that there "would have been issues with standing in trying to suppress the evidence found in the shed" and that he discussed those issues with Lint prior to Lint's decision to plead guilty. Counsel further averred that Lint did not inform him that Lint was "renting" the shed. The district court ruled that this claim failed the deficient performance prong of the *Strickland* test because, based on the information available to counsel, Lint did not have a reasonable expectation of privacy in the shed enabling him to successfully challenge the search.

As noted above, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Boman,* 129 Idaho at 526, 927 P.2d at 916. *See also Baldwin v. State,* 145 Idaho 148, 155, 177 P.3d 362, 369 (2008). In *Baldwin,* our Supreme Court recently reviewed the summary dismissal of a claim of ineffective assistance for failure to file a motion to suppress. The Court concluded that a suppression motion would have succeeded if Baldwin's account of the search was true and would have been denied if the police officers' account was true. *See Baldwin,* at 155, 177 P.3d at 369. The Court held that, because Baldwin raised a genuine issue of material fact as to whether a motion to suppress would have succeeded, he was entitled to an evidentiary hearing on his claim of ineffective assistance for failure to file the motion. *See id.* at 156–57, 177 P.3d at 370–71. We must therefore determine whether Lint has raised a genuine issue of material fact as to whether he would have succeeded on a motion to suppress the evidence discovered during the search of the shed.

■ A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement in the Fourth Amendment of the United States Constitution and Article I, Section 17 of the Idaho Constitution.[2] *State v. Curl,* 125 Idaho 224, 225, 869 P.2d 224, 225 (1993); *State v. McIntee,* 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993). Even if a search is improper, however, only an individual with a privacy interest that was invaded by the search may obtain suppression of evidence found.[3] *State*

**2.** Although Lint contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of whether a motion to suppress was likely to have succeeded. *See State v. Schaffer,* 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App. 1999).

**3.** The word "standing," as used in counsel's affidavit, is often employed as useful shorthand referring to whether the defendant had a privacy interest in a place that was searched such that he or she is entitled to the exclusion of the resulting incriminating evidence. This use of the term, however, is technically inaccurate because addressing whether a defendant is able to show a violation of his or her Fourth Amendment rights is a substantive question more properly placed within the purview of substantive Fourth Amendment law than within that of standing. *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 472–73, 142 L.Ed.2d 373, 379 (1998); *State v. Hanson,* 142 Idaho 711, 716 n. 2, 132 P.3d 468, 473 n. 2 (Ct.App.2006).

*v. Hanson*, 142 Idaho 711, 716, 132 P.3d 468, 473 (Ct.App.2006). Fourth Amendment rights are personal rights which may not be vicariously asserted. *State v. Palmer*, 138 Idaho 931, 934, 71 P.3d 1078, 1081 (Ct.App. 2003). A search may be challenged when a personal interest under the Fourth Amendment is asserted and a legitimate expectation of privacy is shown to exist in the area searched or the items seized. *Id.* The question is whether governmental officials violated any legitimate expectation of privacy held by the defendant. *Id.* The defendant bears the burden of proving a legitimate privacy interest. *Id.*

The United States Supreme Court has held that, in some circumstances, a person may have a legitimate expectation of privacy in the house of another. *See Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85, 95–96 (1990). *See also State v. Vasquez*, 129 Idaho 129, 131, 922 P.2d 426, 428 (Ct.App.1996). In *Olson*, the Court held that an overnight guest in the house of another carried an expectation of privacy that is protected by the Fourth Amendment. *Olson*, 495 U.S. at 100, 110 S.Ct. at 1689–90, 109 L.Ed.2d at 95–96. On the other hand, the Supreme Court has held that one who is merely present with the consent of the householder may not claim the protections of the Fourth Amendment. *See Minnesota v. Carter*, 525 U.S. 83, 91, 119 S.Ct. 469, 474, 142 L.Ed.2d 373, 381 (1998). In *Carter*, the defendants were in an apartment to package cocaine, had no other purpose for being there, had no previous relationship with the lessee, and were there for only a matter of hours. The Court held that the defendants were not overnight guests, lacked a legitimate expectation of privacy in the apartment and, therefore, could not successfully assert a Fourth Amendment challenge to the police search of the apartment. *Id.* Likewise, in *Palmer*, the defendant and another individual went to an informant's house and requested that they be allowed to set up a methamphetamine laboratory on the informant's property. The next day, the police executed a search warrant on the property and found evidence of methamphetamine manufacturing. The record did not indicate that Palmer intended to sleep at the informant's house or do anything other than manufacture methamphetamine. Because Palmer was not an overnight guest and the evidence did not indicate that the parties intended any "rental" arrangement, Palmer did not meet his burden to prove he had a legitimate expectation of privacy. *Palmer*, 138 Idaho at 935, 71 P.3d at 1082.

In the present case, the district court relied on *Palmer*. The facts of that case, however, are distinguishable from the facts that Lint alleged and supported with evidence. Based on the police reports Lint submitted with his application, the resident of the property told officers that she had not been in the shed in over one year, and Lint kept a lock on the shed with his belongings inside. The first police report indicated that the resident informed the first officer that Lint had no reason to be on the property on the night in question, and the resident informed the second police officer that Lint normally checked in with the resident when he arrived on the property. Lint averred in his affidavit, however, that he had a "verbal contract" with the lessee to "occupy" the shed. At the summary dismissal stage, we assume this averment is true. If Lint had a rental arrangement to use the shed, *Palmer* does not compel a conclusion that Lint lacked a reasonable expectation of privacy in the shed. Indeed, even in the absence of a formal rental agreement, a person may maintain custody and control over a building sufficient to challenge a search by possessing the only key and keeping his business and personal belongings there. *See United States v. Chaves*, 169 F.3d 687, 691 (11th Cir.1999). Based on the facts supplied by Lint, he may have had a reasonable expectation of privacy in the shed.

The district court also reasoned that Lint's claim failed because he did not allege that he informed counsel of a rental arrangement. The state has adopted this reasoning on appeal. This approach, however, overlooks the relevant question—whether counsel's performance was deficient and prejudiced Lint based on the evidence Lint submitted. We must accept as true Lint's averment that he had a contract to occupy the shed. Although counsel averred that Lint did not inform

counsel that he was renting the shed, counsel should have been aware from the police reports that the resident of the property had not been in the shed in over one year and that Lint kept the shed locked with his belongings inside. From these facts, counsel should have identified Lint's custody and control of the shed as the critical factual determination, and counsel thus had a duty to conduct a reasonable inquiry into Lint's rights to use the shed. Accepting Lint's averment as true, counsel should have discovered during such an inquiry that Lint had custody and control of the shed and the right to challenge the search. If such facts existed, counsel's performance prejudiced Lint because Lint could have proven he had a reasonable expectation of privacy in the shed and a motion to suppress would have been successful.

▬▬▬▬ The state also asserts that, even if Lint could have established he had a legitimate expectation of privacy in the shed, a motion to suppress would have failed because the resident consented to the search. When the state asserts that a warrantless search was conducted with consent, the state bears the burden of proving that the consent was given by one with authority to do so. *State v. Buhler*, 137 Idaho 685, 687, 52 P.3d 329, 331 (Ct.App.2002). Permission to search may come from someone other than the defendant who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *Id.* A landlord does not have actual authority to consent to a search of a tenant's home when the tenant is in actual possession. *State v. Brauch*, 133 Idaho 215, 219, 984 P.2d 703, 707 (1999). If police reasonably believed, however, that the consenting person possessed sufficient authority to consent to the search, the warrantless search will be upheld, even if it is later determined that actual authority was lacking. *Buhler*, 137 Idaho at 687, 52 P.3d at 331. In evaluating a claim that officers acted on the consent of a person with apparent authority, the proper inquiry is whether the facts available to the officer at the moment warrant a person of reasonable caution in the belief that the consenting party had authority over the premises. *Id.* at 688, 52 P.3d at 332. Additionally,

when the basis for a search is consent, the government must conform to the limitations placed upon the right granted to search. *State v. Staatz*, 132 Idaho 693, 696, 978 P.2d 881, 884 (Ct.App.1999). The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness, "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297, 302 (1991).

Even if the state is correct that the resident possessed apparent authority to consent to a search of the shed, the record at summary dismissal does not establish that she provided the necessary consent. The only evidence of her consent is the first officer's police report. According to that report, the officer asked the resident if she would like him to "check the property for Lint to find out why he would be entering the residence without permission, at late hours of the night, and from a suspicious location at the rear of the property." The police report then indicated that the resident told the officer he "could check the property." This evidence is sufficient to raise a factual issue as to whether the resident's consent was limited to a search of the property for Lint, not an authorization to search the inside of the shed after Lint was found and had exited that building. Additionally, when Lint exited the shed, his indication that he had been working on a motorcycle was consistent with the resident's indication to the officer that Lint worked on automobiles in the shed. Based on the evidence in the record, therefore, once the officer located Lint and Lint exited the shed, the officer did not possess consent to enter the shed and discover the strong chemical odor and other evidence of methamphetamine production.

We conclude that the record contains issues of fact material to the determination of whether Lint would have succeeded on a motion to suppress. The district court therefore erred in summarily dismissing Lint's claim that counsel provided ineffective assistance by failing to file a motion to suppress.

### 3. Coercion to plead guilty

■ Lint also claims that counsel coerced him to plead guilty by advising him that the state had enough evidence to convict him and there were no grounds to suppress the evidence. According to Lint, counsel's advice that Lint should accept the guilty plea to avoid a sentence of twenty-five years rendered Lint's guilty plea invalid. The district court ruled that this claim failed because Lint had not established that counsel performed incompetently in advising Lint to plead guilty.

■ The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Dunlap v. State,* 141 Idaho 50, 60, 106 P.3d 376, 386 (2004). Where a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id. Huck v. State,* 124 Idaho 155, 158, 857 P.2d 634, 637 (Ct.App.1993). The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 209–10 (1985). Therefore, we frame the issue not as whether counsel coerced Lint but, rather, as whether counsel's advice constituted ineffective assistance under the *Strickland* test.

■ The district court erred in summarily dismissing this claim without first holding an evidentiary hearing on whether a motion to suppress would have succeeded. According to the district court's order summarily dismissing Lint's application, Lint was charged with manufacturing methamphetamine and being a persistent violator.[4] When Lint pled guilty to the manufacturing charge, the state dismissed the persistent violator charge. Thus, counsel appears to have negotiated a plea agreement with the state whereby Lint pled guilty to manufacturing in exchange for the state dropping the persistent violator charge. If the probable success of a motion to suppress was questionable, counsel may have performed competently by advising Lint to forego the questionable motion and plead guilty to have the persistent violator sentencing enhancement dropped. *See Huck,* 124 Idaho at 160, 857 P.2d at 639. If the motion would have succeeded, however, counsel's advice that Lint should plead guilty was deficient and prejudiced the outcome of Lint's case. The district court must reconsider the merits of this claim, therefore, after holding an evidentiary hearing.[5]

### C. Unreasonable Search and Seizure of Evidence

■ Lint also asserts that the district court erred in summarily dismissing his claim that the state violated his right against unreasonable searches and seizures. There will be no need, however, to address Lint's Fourth Amendment challenge independent of his claims of ineffective assistance of counsel. The district court ruled that Lint waived his right to challenge the search and seizure when Lint pled guilty. A voluntary and intelligent guilty plea inherently waives many rights which otherwise could have been asserted in the trial process, including the right to challenge the admissibility of evidence upon which the state might have relied at trial. *See State v. Gardner,* 126 Idaho 428, 433 n. 6, 885 P.2d 1144, 1149 n. 6 (Ct.App.

---

4. Lint did not request that the record or transcripts from his underlying criminal case be included in the record on this appeal. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell v. Sellers,* 130 Idaho 122, 127, 937 P.2d 434, 439 (Ct.App.1997). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.* We therefore assume that the district court's characterization of the underlying criminal proceedings was accurate.

5. Lint does not appear to challenge on appeal the district court's order denying his request for post-conviction counsel. We note, however, that our ruling that Lint is entitled to an evidentiary hearing also compels a conclusion that Lint's pro se application alleged facts that raise the possibility of valid claims, and the district court should appoint counsel on remand if Lint still desires counsel. *See Charboneau v. State,* 140 Idaho 789, 793, 102 P.3d 1108, 1112 (2004).

1994). As discussed above, the voluntariness of Lint's plea depends on whether counsel's advice to forego a motion to suppress was within the range of competence demanded of attorneys in criminal cases. *See Dunlap,* 141 Idaho at 60, 106 P.3d at 386; *Huck,* 124 Idaho at 158, 857 P.2d at 637. If counsel's advice was competent, Lint's guilty plea was voluntary, and the plea waived his right to challenge the search and seizure. On the other hand, if counsel's advice to forego the motion to suppress constituted ineffective assistance, the district court must vacate Lint's judgment of conviction. Should the state choose to continue prosecuting the charges against Lint, he will be permitted to challenge the search and seizure as a violation of his Fourth Amendment rights in the ensuing criminal proceedings. Thus, his post-conviction claim that the search violated his Fourth Amendment rights need not be addressed if the district court determines that his judgment of conviction must be vacated on the grounds of ineffective assistance of counsel.

### IV.

### CONCLUSION

The district court properly dismissed Lint's due process claims on the basis that the claims were conclusory allegations, unsubstantiated by any fact. The district court properly dismissed Lint's claim that counsel provided ineffective assistance by failing to file a motion to compel discovery because the claim failed the deficient performance prong of the *Strickland* test. The district court erred, however, by summarily dismissing Lint's claims that his counsel provided ineffective assistance by failing to file a motion to suppress and by advising Lint to plead guilty. The district court should hold an evidentiary hearing on those ineffective assistance claims. Regardless of the outcome of that hearing, Lint's Fourth Amendment challenge independent of his ineffective assistance claims will not entitle him to additional relief, and the district court need not address that Fourth Amendment challenge independent of the ineffective assistance claims. We therefore affirm in part and reverse in part the district court's order summarily dismissing Lint's application for post-conviction re-

lief and remand for an evidentiary hearing consistent with this opinion. No costs or attorney fees are awarded on appeal.

Chief Judge GUTIERREZ and Judge LANSING concur.

