32 P.3d 685

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Victor A. SLATER, Defendant–Appellant.**

No. 26090.

Court of Appeals of Idaho.

Aug. 3, 2001.

Review Denied Sept. 28, 2001.

296

Ronaldo A. Coulter, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Chief Judge.

Slater appeals from the denial of his motion to suppress, and from the judgment of conviction entered upon the jury's verdicts of guilty to felony charges of manufacturing methamphetamine and delivery of methamphetamine, and two misdemeanors. He also appeals his sentences and the denial of his I.C.R. 35 motion for reduction of sentence. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The state's evidence indicates that on April 1, 1999, at about 6:47 p.m., Kellogg Police Officer Dewey Burns observed the two right side tires of Slater's vehicle cross the fog line on the side of the highway on-ramp as that vehicle entered the highway. Officer Burns believed that Slater was involved in the man-

ufacture and distribution of drugs and was aware that he was out of custody pending appeal for a drug related offense. Burns followed Slater's vehicle for several miles, observing the vehicle being driven at varying speeds between 40 and 65 miles per hour in a 75 mile per hour zone, before initiating a traffic stop. Slater's vehicle did not immediately pull over when Officer Burns activated his car's overhead lights and siren, but proceeded down the highway more than a mile before turning off the highway and into a service station.

Upon approaching Slater's vehicle, Officer Burns smelled a chemical odor he associated with the manufacture of methamphetamine. The vehicle's passenger, Holly Bragg, told Officer Burns that Slater had swallowed something and had thrown a white object out of a hole by the gearshift lever during the pursuit.[1] Another officer located a white coffee filter containing a strong smelling powdery substance, with an odor identical to that emanating from Slater's vehicle, at the location Bragg had indicated. Slater was arrested on the charge of conspiracy to manufacture a controlled substance—methamphetamine, I.C. § 37–2732(f) and possession of a controlled substance, I.C. § 37–2732(c)(1).

Believing that the chemical odor was an indication that Slater was involved in the manufacture of methamphetamine, officers went to a residence at 402 Cameron in Kellogg, a place where Slater's vehicle had recently been seen several times. The resident, Eugene Rice, allowed the officers to enter the house and signed a consent to search form. The officers immediately noted a strong chemical odor and located chemicals, glassware, filters, and other apparatus commonly used to manufacture methamphetamine. Due to the unknown nature of the chemicals, the officers left the residence, obtained a search warrant, and called in Fire and Medical units. Rice told police that Slater had access to the residence and had been there several times that day. The subsequent search revealed methamphetamine,

chemical precursors and items associated with manufacturing methamphetamine.

After a preliminary hearing, Slater was bound over to the district court for trial. Slater filed a motion to suppress, asserting that Officer Burns had no lawful authority to conduct the traffic stop. Following a hearing, at which Burns testified as set forth above, the district court denied Slater's motion to suppress, explaining that a vehicle driving over the fog line by four inches and varying in speed by between 10 and 35 miles per hour under the speed limit provided the basis for reasonable suspicion that the driver of the vehicle was impaired. Alternatively, the court concluded that there was no connection established between the seizure of evidence stemming from the traffic stop and the evidence obtained from Rice's residence.

Following a jury trial, Slater was found guilty of manufacturing a controlled substance and delivery of a controlled substance, both felonies, as well as misdemeanor fleeing or attempting to elude a peace officer and possession of drug paraphernalia. At sentencing, the district court imposed two concurrent terms of twenty-five years, with eight years fixed, for the felony convictions. Slater filed a timely motion for reduction of sentence pursuant to I.C.R. 35, which the district court denied. Slater appeals.

## II.

### THE DISTRICT COURT'S DENIAL OF SLATER'S MOTION TO SUPPRESS THE COFFEE FILTER CONTAINING METHAMPHETAMINE

#### A. Introduction

Slater argues that the district court erred in denying his motion to suppress because Officer Burns lacked reasonable suspicion of criminal activity. Slater contends that the officer did not act until four miles after observing Slater's vehicle's right tires cross the fog line by 4 to 6 inches one time while on the highway on-ramp. Slater maintains that

---

1. Officer Burns' review of the patrol car's video of the pursuit showed that there was a white coffee filter under Slater's vehicle.

Officer Burns illegally stopped his vehicle on a pretext to search for drugs. We disagree.

## B. Standard Of Review

■ In evaluating a ruling on a motion to suppress, we defer to factual findings of the trial court unless they are clearly erroneous, but we freely review the trial court's determination as to whether constitutional standards have been satisfied in light of the facts found. *State v. Morris*, 131 Idaho 562, 565, 961 P.2d 653, 656 (Ct.App.1998); *State v. Pick*, 124 Idaho 601, 603, 861 P.2d 1266, 1268 (Ct.App.1993); *State v. Heinen*, 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988).

## C. Reasonable Suspicion To Stop Slater's Vehicle

■ The Fourth Amendment's prohibition against unreasonable searches and seizures is implicated where an officer conducts a traffic stop. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660, 667 (1979); *State v. Anderson*, 134 Idaho 552, 554, 6 P.3d 408, 410 (Ct.App.2000); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). The Fourth Amendment permits a limited investigative detention of an individual if the police officer who seized the individual has reasonable suspicion that the person has committed or is about to commit a criminal act. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889, 911 (1968); *State v. DuValt*, 131 Idaho 550, 552–53, 961 P.2d 641, 643–44 (1998). The police officer's suspicion must be premised upon specific articulable facts and the rational inferences drawn from those facts. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868 at 1879–80, 20 L.Ed.2d 889 at 905–06; *State v. Gallegos*, 120 Idaho 894, 896–97, 821 P.2d 949, 951–52 (1991). The reasonableness of the suspicion is to be evaluated upon the totality of the circumstances at the time of the stop. The "whole picture" must yield a particularized and objective basis for suspecting that the individual being stopped is or has been engaged in wrongdoing. *United States v. Cortez*, 449 U.S. 411, 417–18, 101

S.Ct. 690, 694–95, 66 L.Ed.2d 621, 628–29 (1981); *State v. McAfee*, 116 Idaho 1007, 1009, 783 P.2d 874, 876 (Ct.App.1989).

■ Idaho Code § 49–630(1) requires that a vehicle be driven on the right half of the roadway, except in certain circumstances that are not applicable in this case. The "roadway" means that portion of a highway that is "improved, designed or ordinarily used for vehicular travel." I.C. § 49–119(18). It does not include "sidewalks, shoulders, berms [or] rights-of-way." *Id.* Accordingly, when Officer Burns observed Slater's tires cross the fog line, albeit fleetingly, Burns now possessed the requisite reasonable suspicion that Slater had violated I.C. § 49–630 by driving on the shoulder of the highway, rather than on the "roadway." *See State v. Dewbre*, 133 Idaho 663, 665–67, 991 P.2d 388, 390–92 (Ct.App.1999). Furthermore, Officer Burns observed Slater proceed down the highway at varying speeds between 10 and 35 miles per hour under the 75 mile per hour speed limit. Based upon Slater's erratic speed and crossing of the fog line, Officer Burns had reasonable suspicion that Slater might also be driving under the influence of alcohol and or drugs, I.C. § 18–8004, or was otherwise impaired.[2] Consequently, Slater's motion to suppress based upon alleged unlawfulness of the traffic stop was correctly denied.

## III.

## THE DISTRICT COURT'S DENIAL OF SLATER'S MOTION TO EXCLUDE THE HEARSAY STATEMENTS OF HOLLY BRAGG AS NOT ADMISSIBLE UNDER I.R.E. 803(24)

### A. Standard Of Review

■ A trial court has broad discretion in deciding whether to allow hearsay evidence under Rule 803(24). This Court will not overturn the exercise of the trial court's discretion absent a clear showing of abuse. *State v. Zimmerman*, 121 Idaho 971, 974, 829

---

**2.** In *State v. Waldie*, 126 Idaho 864–865, 893 P.2d 811, 812 (Ct.App.1995), this Court explained that an officer's observation of a vehicle shifting from side to side within the lane and

proceeding at varying speeds between 35 and 50 miles per hour in a 55 mile per hour zone gave rise to reasonable suspicion of DUI or need for assistance.

P.2d 861, 864 (1992). *See also State Dep't of Health & Welfare v. Altman,* 122 Idaho 1004, 1007, 842 P.2d 683, 686 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## B. The Admissibility Of Bragg's Statements

Prior to trial, counsel for Slater argued that Bragg's statements were inadmissible hearsay and self-serving statements. The state argued that Bragg's statement about Slater swallowing objects just prior to the traffic stop was offered to show why Slater was taken to the hospital after being taken into custody. The state further asserted that the statement about Slater discarding an object down a hole in the shift boot of his vehicle was supported by circumstantial guarantees of trustworthiness because Officer Burns' videotape showed a white object on the roadway beneath Slater's vehicle. This object—a coffee filter containing methamphetamine—was the same type as found at Rice's residence and had the same odor as that permeating Slater's clothing and person.

■ Once a statement is determined to be hearsay, even if it is found to be admissible due to an exception to the hearsay rule, a criminal defendant's rights pursuant to the Confrontation Clause of the Sixth Amendment of the United States Constitution must be addressed. In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court set forth an approach for determining when potentially incriminating statements, admissible under an exception to the hearsay rule, also meet the requirements of the Confrontation Clause. If the statement falls within a firmly rooted hearsay exception, reliability can be

inferred. If, however, the statement does not fit within a firmly rooted hearsay exception, the statement is presumed inadmissible, and that presumption can only be overcome by a showing of particularized guarantees of trustworthiness. *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531 at 2539, 65 L.Ed.2d 597 at 607–08.

Idaho Rule of Evidence 803 provides, in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness.[3]

. . .

(24) Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Idaho Rule of Evidence 803(24) has been specifically addressed by the United States Supreme Court in relation to the Confrontation Clause and determined not to be a well-rooted exception to the hearsay rule, thus requiring particularized guarantees of trustworthiness. *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *see also Doe v. State,* 133 Idaho 811, 818–19, 992 P.2d 1211, 1218–19 (Ct.App.1999) (holding that the Confrontation Clause required a showing of the victim's unavailability prior to the admission of a victim's statements under I.R.E. 803(24)).

■ Trustworthiness must be shown from the totality of the circumstances that surround the making of the statement. *Wright,* 497 U.S. at 819, 110 S.Ct. 3139 at 3148–49, 111 L.Ed.2d 638 at 654–55. While the existence of corroborating evidence may indicate that any error in the admission of a statement was harmless, such evidence is not

3. We note that Holly Bragg was not present to testify at Slater's trial.

an appropriate basis for determining whether a statement is trustworthy. *Id.* at 823; *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686–87 (1986).

■ The district court ruled that the evidence, i.e., the videotape from Officer Burns' patrol car, the same type and color of coffee filters found at Rice's residence where Slater was operating a clandestine methamphetamine laboratory, and the distinctly similar odor of the filter, the odor of Slater and the odor at Rice's residence, all corroborated the trustworthiness of Bragg's statements and, thus, that the statements were admissible.

At trial, Officer Burns testified as to the statements Holly Bragg made:

Q. . . . [D]id officers talk to [Slater's] passenger, Holly Bragg?

A. Yes, we did.

Q. During that conversation did Ms. Bragg tell you that Vic Slater had swallowed something after you activated your lights?

A. Yes, she did.

Q. Did she also tell you that he had dropped something down the gearshift boots during the pursuit?

A. Yes, she did.

. . .

Q. And from the scene where was Mr. Slater taken to?

A. Mr. Slater from the scene was transported to Shoshone Medical Center.

We regard Bragg's statements as testified to by Burns to be hearsay, if admitted for the truth of the matters asserted therein, and not otherwise admissible under any firmly rooted hearsay exception. *Wright,* 497 U.S. at 817, 110 S.Ct. 3139 at 3147–48, 111 L.Ed.2d 638 at 653–54. In addition, there was insufficient evidence presented surrounding the making of the statement, based upon the relevant circumstances, to render the declarant particularly worthy of belief. *Wright,* 497 U.S. at 819, 110 S.Ct. 3139 at 3148–49, 111 L.Ed.2d 638 at 654–55. Nor was any showing made as to the reason for Bragg's unavailability. *See Doe,* 133 Idaho at 817, 992 P.2d at 1217. Finally, while Bragg's statements were admitted as a partial justification for taking Slater to the hospital, the jury was not given a limiting instruction in this regard.

Accordingly, we hold that Bragg's statements were inadmissible under I.R.E. 803(24).

## C. Harmless Error

■ The state argues that even if Bragg's statements were erroneously admitted, such error is harmless. An error or defect in a criminal trial that does not affect the defendant's substantial rights will not necessitate a new trial. I.C.R. 52; *State v. Pizzuto,* 119 Idaho 742, 753, 810 P.2d 680, 691 (1991) overruled on other grounds *State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991). Accordingly, convictions will not be set aside for errors or defects that have little, if any, likelihood of having changed the results of the trial. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 837, 17 L.Ed.2d 705, 709 (1967); *State v. Garcia,* 100 Idaho 108, 111, 594 P.2d 146, 149 (1979); *State v. Reynolds,* 120 Idaho 445, 451 n. 5, 816 P.2d 1002, 1008 n. 5 (Ct.App.1991).

■ "The test for harmless error . . . is whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence." *State v. Moore,* 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *Giles v. State,* 125 Idaho 921, 925, 877 P.2d 365, 369 (1994); *State v. Barcella,* 135 Idaho 191, 196–97, 16 P.3d 288, 293–94 (Ct.App.2000).

■ From our review of the evidence and the felony charges, we conclude that Bragg's testimony was not particularly material to those convictions. Rather, her statement about Slater stuffing a white object through a hole in the shift boot of his own car was further foundation for why the officers went to Rice's home. In light of the mass of evidence supporting his conviction on those charges, beyond any reasonable doubt the admission of her hearsay statements did not

contribute to Slater's felony convictions.[4] *See Barcella,* 135 Idaho at 203–04, 16 P.3d at 300–01. The admission of Bragg's statements was harmless error.

## IV.

## THE DISTRICT COURT'S DENIAL OF SLATER'S MOTION FOR MISTRIAL DUE TO POTENTIAL JURORS OBSERVING HIM DRESSED IN JAIL GARB, HANDCUFFED AND SHACKLED

### A. Standard Of Review

As this Court recently explained in *Barcella,* 135 Idaho at 197, 16 P.3d at 294, the standard for review of a refusal to grant a mistrial is well established:

[T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the 'abuse of discretion' standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

### B. Analysis

▆▆▆ A criminal defendant should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial. *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126, 130–31 (1976). The *Estelle* Court's holding

has been extended to a defendant's appearance in handcuffs or shackles. *See United States v. Waldon,* 206 F.3d 597, 607 (6th Cir.2000). Where the conditions under which the defendant was briefly observed were routine security measures rather than situations of unusual restraint, the defendant is required to show actual prejudice. *Id.* In order for the defendant to assert that he or she was prejudiced by being briefly viewed wearing restraints or jail clothes, there must be some evidence that the jury saw the restraints and thereby drew a conclusion regarding the defendant's character. *See State v. Miller,* 131 Idaho 288, 293, 955 P.2d 603, 608 (Ct.App.1997).

As in *State v. Youngblood,* 117 Idaho 160, 786 P.2d 551 (1990), Slater asserts that he was denied a fair trial because prior to jury selection, he was brought into a courthouse hallway in jail garb and shackles and that three or four potential jurors, none of which he could identify, saw him during a ten-minute period. After the jury was selected and a full day of proceeding had been conducted, Slater's counsel made a motion for mistrial.

▆▆▆ The following day, a hearing was held at which Slater testified that he was brought to the courthouse in jail clothes and shackles where three or four potential jurors observed him through a window looking into the hallway outside the courtroom. A representative from the Sheriff's office testified that security concerns arising from a previous defendant's behavior while in civilian clothing prompted the jail to bring Slater to the courthouse building in jail garb.

Counsel for Slater did not request that the district court *voir dire* the jury members to determine which, if any, had seen Slater in jail clothes and shackles. It appears that counsel for Slater did not want any such inquiry to occur because, as he explained at the hearing on the motion for a mistrial; "Nothing was raised in *voir dire* with regard to that by myself because I don't want that

---

**4.** The only charge to which Bragg's statement was particularly material was the possession of drug paraphernalia charge. However, other evidence—Rice's testimony, the patrol car videotape, Slater's knowledge of his own vehicle, and the coffee filter containing methamphetamine recovered from the roadway—was more than sufficient to support a conviction for possession of drug paraphernalia. We reach the same harmless error conclusion here as well.

made known to anybody. And that was the only reason. I don't think that I have any obligation to bring something like that to the attention of potential jurors." Counsel for Slater did not present any evidence that the application of the jail's policy was other than for security purposes or that any potential juror's observation of him in jail clothes and shackles was anything other than inadvertent. Likewise, Slater did not ask for a jury instruction on the matter. The district court condemned the jail's policy of bringing defendants to the courthouse in jail garb and shackles, but declined to grant Slater's motion.

Slater has failed to present any evidence that an empanelled juror saw him dressed in jail garb, let alone that he was actually prejudiced as a result. Under these circumstances, we cannot say that the district court erred in denying Slater's motion for a mistrial. *See Barcella*, 135 Idaho at 199, 16 P.3d at 296.

## V.

## SENTENCING ISSUES

Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992).

> [A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reason-

able minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Broadhead*, 120 Idaho at 145, 814 P.2d at 405, (quoting *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982)).

Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez*, 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). With respect to sentences imposed under the Uniform Sentencing Act,

> the minimum period [of confinement] generally will be treated as the probable measure of confinement for the purpose of sentence review. By focusing on this period, we do not wholly disregard the aggregate length of the sentence, nor do we suggest that a prisoner will be *entitled* to parole when the minimum period has elapsed; but we do recognize that he will be *eligible* for parole at that time.

*State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989).

Slater's minimum periods of confinement are concurrent terms of eight years. Accordingly, he must demonstrate that these eight-year periods constitute an abuse of the district court's discretion. Pursuant to I.C. § 37-2732(a)(1)(A), the maximum prison terms for manufacturing a controlled substance, methamphetamine, and delivery of a controlled substance, methamphetamine, are imprisonment for life and a fine of up to $25,000.

The instant offenses occurred on April 1, 1999, when a search of Rice's home revealed that thirty-five-year-old Slater was operating a methamphetamine laboratory in the basement. These crimes represent Slater's third and fourth felony drug convictions, committed while he was out on bond pending appeal of his second felony conviction for possession with intent to deliver. Slater has been using methamphetamine since he was sixteen years old and has a $175 a week habit. Slater is married, supports his four

children, and has skills as a locksmith, sign painter, computer repairer, and web page designer. He reported being interested in drug treatment during the presentence interview, but made no previous attempts to seek treatment on his own.

The presentence investigator noted that Slater subjected himself to a high risk of chemical exposure through his criminal activity and that he takes no responsibility for his actions. At sentencing, the district court explained that Slater, while expressing remorse, still committed the instant offenses while out on bond pending appeal and that for the protection of society and deterrence of others justified stern treatment of methamphetamine manufacturers. Having reviewed the record in this case, we cannot say that the district court abused its discretion in sentencing Slater.

Next, we review whether the district court erred in denying Slater' Rule 35 motion. An order denying a motion for reduction of a sentence under Rule 35 is reviewed for an abuse of discretion. If the sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *Hernandez,* 121 Idaho at 117, 822 P.2d at 1014. Slater presented no new or additional evidence in support of his Rule 35 motion. Upon review of the record before the district court at the time of the denial of Slater's Rule 35 motion, we conclude no abuse of discretion has been shown.

## VI.

## CONCLUSION

For the reasons set forth above, Slater's convictions for manufacturing methamphetamine, delivery of methamphetamine, possession of drug paraphernalia, and eluding an officer are affirmed. Slater's concurrent sentences of twenty-five years, with eight years fixed, are also affirmed.

Judge PERRY and Judge Pro Tem SWANSTROM concur.