**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45766**

| | |
|---|---|
| LLOYD HARDIN McNEIL, | ) |
| | ) Filed: October 8, 2019 |
| Petitioner-Appellant, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Order summarily dismissing second amended petition for post-conviction relief, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jenevieve C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeffery D. Nye, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Lloyd Hardin McNeil appeals from the district court's order summarily dismissing his second amended petition for post-conviction relief. He asserts the district court erred in dismissing three claims that his trial counsel provided ineffective assistance of counsel. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On direct appeal, this Court set forth the underlying facts as follows:

On March 5, 2011, firefighters responded to a residential fire in a Boise neighborhood. The firefighters determined that the fire was confined to a mattress and box spring located in a bedroom. After removing the mattress from the house, firefighters found the body of Natalie Davis lying on top of the box spring. Following an investigation, firefighters concluded that the fire was

1

intentional and human caused. This conclusion was supported by subsequent reconstructed tests of the scenario.

Pursuant to an investigation, police officers discovered that Davis' car was missing, along with her two dogs. Later, the dogs were located in a "no kill" shelter in Dillon, Montana and McNeil was identified as the individual who dropped the dogs off. Thereafter, McNeil was located in Seattle, Washington and arrested on a fugitive warrant.

McNeil was charged with second degree murder, first degree arson, and grand theft. Following a jury trial, he was acquitted of second degree murder and convicted of the lesser-included offense of voluntary manslaughter. He was also convicted of first degree arson and grand theft.

*State v. McNeil*, 155 Idaho 392, 395, 313 P.3d 48, 51 (Ct. App. 2013). This Court affirmed the judgment of conviction and sentences.

Thereafter, McNeil filed a pro se petition for post-conviction relief. After counsel was appointed, McNeil filed an amended petition and then a second amended petition asserting nineteen claims. The State moved for summary dismissal challenging all of McNeil's claims, and the district court issued a notice of intent to dismiss. After McNeil responded to the notice, the district court dismissed McNeil's second amended petition.

McNeil timely appeals, asserting the district court erred in summarily dismissing three of his claims. Specifically, McNeil challenges the summary dismissal of his claims that his trial counsel was ineffective for (1) failing to investigate the victim's attempt to pawn her heirloom ring; (2) failing to inform the judge a juror saw McNeil in the back of a patrol car during trial and failing to move for a mistrial; and (3) failing to inform the judge a juror was seen speaking with the victim's uncle and failing to move for a mistrial.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. Idaho Code § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil

2

Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

**A.     Alleged Failure to Investigate Defense to Grand Theft**

McNeil challenges the district court's dismissal of his claim that his trial counsel was ineffective for failing to investigate a defense to the grand theft charge. That charge alleged McNeil stole the victim's heirloom ring. During trial, the State presented evidence that McNeil killed the victim, stole her ring, and convinced a female acquaintance to sell the ring at a pawnshop. Further, the victim's mother testified that the ring was a family heirloom; she gave the ring to her daughter, the victim; and the victim was very fond of the ring. Ultimately, the jury found McNeil guilty of stealing the ring.

In McNeil's second amended petition, McNeil alleges that the victim attempted to pawn her ring before her death; the pawnshop's video surveillance "may have shown [the victim] attempting to pawn her ring"; and this evidence "may have rebutted the inference" the victim was reluctant to part with her ring. In support of this claim, McNeil offered the affidavit of a private investigator. The investigator stated he interviewed an employee of the pawnshop who indicated that on February 18, 2011--the date McNeil claimed the victim attempted to pawn her ring--the pawnshop had video surveillance of the store's interior and that video was kept for forty-five days.

In its notice of intent to dismiss, the district court stated this evidence failed to establish a prima facie case of counsel's deficient performance and resulting prejudice. Specifically, the district court stated that (1) the victim's attempt to sell the ring was irrelevant; (2) the investigator's statements about the existence of the video were inadmissible hearsay; and regardless, (3) any video would have been destroyed by the time of McNeil's indictment on May 10, which was more than forty-five days after February 18.

In response to the district court's notice, McNeil filed his own affidavit. According to McNeil's affidavit, McNeil met his trial counsel for the first time on March 30, and during that meeting, McNeil explained to his counsel that the victim gave him the ring in partial payment for a debt and that McNeil "took possession of her ring at the counter inside [the pawnshop]." McNeil also filed the affidavit of a pawnshop employee stating the surveillance video from February 18 would have still been available on March 30. The district court acknowledged in its summary dismissal order that McNeil had submitted additional affidavits. It did not, however, specifically address McNeil's failure to investigate claim, but it concluded generally that McNeil had still "failed to present key evidence" necessary to his claims.

On appeal, McNeil asserts he made a prima facie showing that his counsel's performance was deficient for failing to investigate the video and that McNeil was prejudiced as a result. Specifically, McNeil contends that he told his counsel on March 30 the victim gave McNeil her ring on February 18; his trial counsel "could have obtained the February 18 video surveillance on March 30"; and a video showing the victim giving her ring to McNeil would have provided a defense to the grand theft charge. The State responds that counsel "had no obligation to investigate" the video on March 30--the same day McNeil told counsel about the alleged video; no evidence shows the video would have been available after March 30; and McNeil's allegations of what the video "may have shown" are insufficient.

"Defense counsel has a duty to conduct a prompt and thorough investigation." *Eddington v. State*, 162 Idaho 812, 823, 405 P.3d 597, 608 (Ct. App. 2017). "The duty to investigate requires only that counsel conduct a reasonable investigation." *Id.* Review of the attorney's pretrial preparation "is essentially premised upon the circumstances surrounding the attorney's investigation." *Gee v. State*, 117 Idaho 107, 110, 785 P.2d 671, 674 (Ct. App. 1990). A variety of factors specific to the case, however, shape the extent of the investigation. *Id.* at 111, 785 P.2d at 675. To show counsel's performance was deficient in failing to investigate, a petitioner must establish that but for counsel's inadequacies the trial's outcome would have been different. *Thomas v. State*, 145 Idaho 765, 769, 185 P.3d 921, 925 (Ct. App. 2008). Merely alleging counsel may have discovered a weakness in the State's case through further investigation is insufficient to show deficient performance. *Id.* "Determining whether an attorney's pretrial preparation falls below a level of reasonable performance constitutes a question of law." *Thomas*, 145 Idaho at 769, 185 P.3d at 925; *see also Gee*, 117 Idaho at 110, 785 P.3d at 674. The Court, however, "will not second-guess trial counsel in the particularities of trial preparation." *Thomas*, 145 Idaho at 769, 185 P.3d at 925.

Under these legal principles, the district court did not err in dismissing McNeil's ineffective assistance of counsel claim for failure to investigate the video. Although McNeil's affidavit arguably solved the relevancy and hearsay issues the district court raised in its notice of intent to dismiss, McNeil still failed to establish genuine issues of material fact regarding both counsel's deficient performance and resulting prejudice. McNeil's unsupported allegations that the video "may have shown [the victim] attempting to pawn her ring" and "may have rebutted the inference" she was reluctant to part with the ring are insufficient to show the video would

6

have made a difference in the trial's outcome. *See id*. (requiring petitioner to establish that but for counsel's inadequacies trial outcome would have been different). Further, McNeil's allegations of what the video "may have" shown are insufficient to show counsel's deficient performance. That counsel potentially failed to discover a possible weakness in the State's case is not deficient performance. *See id.*

Moreover, McNeil only presented admissible evidence that the alleged pawnshop video was available on March 30, the first day McNeil met with his trial counsel to discuss the possible, future charges against McNeil. This meeting occurred several weeks before the State actually indicted McNeil on May 10. To expect counsel to immediately investigate the video on the very same day as McNeil's first meeting with counsel, before the State actually charged McNeil with grand theft, is not a reasonable expectation, and we are not persuaded by McNeil's argument that "prompt investigation" required counsel to act immediately on the same day as meeting McNeil.

**B.      Alleged Failure to Address Juror Seeing McNeil in Patrol Car**

McNeil also challenges the district court's summary dismissal of his claim that his trial counsel was ineffective for failing to move for a mistrial after a juror saw McNeil in the back of a patrol car. In his petition, McNeil alleged that a juror had seen McNeil in the back of a patrol car and that his counsel failed "to alert the judge, make a proper record, and ask the court to conduct an inquiry" into the matter. Further, McNeil alleged the incident compromised his right to a fair trial because "the jury/juror could assume he was guilty."

In its notice of intent to dismiss, the district court, citing *Bias v. State*, 159 Idaho 696, 365 P.3d 1050 (Ct. App. 2015), stated that McNeil failed to offer any admissible evidence that a juror actually saw McNeil in a patrol car and that the incident actually prejudiced him. In response, McNeil filed his affidavit attesting he "made eye contact" with the juror who mouthed, "That's him," to another individual. Despite this affidavit, the district court summarily dismissed the claim, concluding McNeil's allegations were still insufficient to allege a claim because "McNeil failed to make any allegation of prejudice."

On appeal, McNeil argues that the juror seeing McNeil in the patrol car violated his due process rights because this incident is akin to a juror seeing McNeil in jail attire and that the

7

district court erred by relying on *Bias* to require him "to prove actual prejudice to a degree higher than a 'reasonable probability.'" McNeil misconstrues the district court's reliance on *Bias*.[1]

In that case, Bias filed a petition for post-conviction relief, arguing his counsel failed to move for a mistrial after all the jurors witnessed him being led into the courthouse in his orange, jail-issued jumpsuit. *Id.* at 704, 365 P.3d at 1058. This Court noted a prima facie showing of ineffective assistance of counsel for failing to move for a mistrial requires factual allegations which, if true, would have resulted in the court granting the motion. *Id.* Further, the Court noted that to prevail on a mistrial motion, Bias must show that (1) the jurors who saw him were empaneled on his jury; and (2) he was actually prejudiced as a result of them seeing him in an orange jumpsuit. *Id.* at 705, 365 P.3d at 1059. Although the Court concluded Bias's personal knowledge about the jurors' identities was a sufficient prima facie showing as to the first element, it concluded Bias's claim still failed because he did not allege he was prejudiced. *Id.* Regarding this failure, the Court concluded that "a juror's inadvertent sighting of a defendant in jail attire or restraints outside the courtroom is not so inherently prejudicial that it negates a petitioner's obligation to make a prima facie showing of *actual* prejudice." *Id.*[2]

The *Bias* Court's conclusion that a petitioner must show *actual* prejudice relates to the petitioner's burden to establish the grounds for a mistrial motion. In support, the *Bias* Court cites

---

[1]    *Bias* addresses the issue of jurors seeing a defendant in jail attire not in a patrol car. The district court's reliance on *Bias*, however, implicitly assumes these situations are comparable, and McNeil argues on appeal that they are. The State does not dispute this comparison. As a result, we do not address the issue but rather, for purposes of our analysis, assume without deciding that a juror seeing a defendant in a patrol car is the equivalent of a juror seeing a defendant in jail attire.

[2]    McNeil also notes that *Bias* states:

> Bias's allegation that jurors saw him in his jail uniform is a fact within his personal knowledge, to which he attested through sworn documents, and thus constitutes admissible evidence. This fact, if true, constitutes a prima facie showing sufficient to justify an evidentiary hearing to determine whether the jurors that allegedly saw him were empaneled on his jury.

*Bias*, 159 Idaho at 705, 365 P.3d at 1059 (citation omitted). Based on this language, McNeil argues his allegation of personal knowledge that a juror saw McNeil in a patrol car alone is sufficient to require an evidentiary hearing on his post-conviction claim. Despite the above-quoted language, however, we decline to construe *Bias* in this manner because the *Bias* Court ultimately concluded Bias failed to make a prima facie showing and affirmed the district court's summary dismissal of Bias's claim.

*State v. Slater*, 136 Idaho 293, 32 P.3d 685 (Ct. App. 2001); *Slater* in turn provides that, when potential jurors "briefly observe[]" a defendant "under routine security measures rather than situations of unusual restraint," the defendant must "show actual prejudice" to warrant a mistrial. *Id.* at 301, 32 P.3d at 693. Accordingly, the district court's reference to a showing of "actual prejudice" is not a reference to a heightened standard for proving ineffective assistance of counsel beyond a reasonable probability, as McNeil argues. Rather, the district court properly considered the probability of success of a mistrial motion under the standard for such a motion in determining whether his counsel's conduct constituted ineffective assistance of counsel. *See, e.g.*, *Lint v. State*, 145 Idaho 472, 477, 180 P.3d 511, 516 (Ct. App. 2008) (ruling court may consider probability of success of motion to determine whether conduct constituted ineffective assistance of counsel). The district court's conclusion that McNeil failed to show prejudice relates to his burden to show a mistrial motion would have actually been granted if made, which is the correct analysis of an ineffective assistance of counsel claim for failure to make a motion. *See id.*

Regardless, McNeil fails to raise a genuine issue of material fact of prejudice, actual or otherwise. Although McNeil's allegation that he made eye contact with the juror is sufficient to establish an empaneled juror saw McNeil, he failed to offer admissible evidence sufficient to raise a genuine factual issue of prejudice. McNeil offers only his own affidavit stating the juror could assume McNeil was guilty and thereby compromise his right to a fair trial. Mere conclusory allegations, unsupported by admissible evidence, however, are insufficient to create a genuine issue of material fact. *See, e.g.*, *Roman*, 125 Idaho at 647, 873 P.2d at 901 (ruling conclusory allegations unsupported by admissible evidence are insufficient to create genuine issue of material fact); *Baruth*, 110 Idaho at 159, 715 P.2d at 372 (same).

Finally, McNeil argues the district court erred by requiring a prima facie showing of actual prejudice to support a mistrial because McNeil alleged more than his trial counsel's failure to seek a mistrial as a result of the juror seeing McNeil in the patrol car. McNeil's other allegations are that his trial counsel failed "to alert the judge, make a proper record, and ask the court to conduct an inquiry." Contrary to these allegations, however, McNeil admits his counsel did actually alert the judge. In his affidavit, McNeil attests that he informed his trial counsel of the issue and that trial counsel reported it to the court. McNeil cites no authority that trial counsel's handling of the issue was somehow deficient. For example, although McNeil alleges

9

trial counsel failed to make a record of the issue, McNeil cites no authority requiring trial counsel to make such a record. Accordingly, we decline to consider the issue on appeal. *See Murray v. State*, 156 Idaho 159, 168, 321 P.3d 709, 718 (2014) (ruling party waives appellate issue absent either authority or argument).

**C.      Alleged Failure to Address Juror Speaking with Victim's Uncle**

McNeil also challenges the district court's dismissal of his claim that his counsel was ineffective for failing to move for a mistrial after McNeil saw a juror speaking with the victim's uncle. In his petition, McNeil alleged that he "witnessed a juror speaking with a member of the victim's family" and that McNeil's "right to fair trial was compromised as a result." In its notice of intent to dismiss, the district court stated the claim was not "properly supported," noting that I.C. § 19-4903 requires specific allegations and that McNeil's conclusory allegations were insufficient.

In response, McNeil submitted his affidavit stating that while being transported to the courthouse, he "saw a male juror in front of the courthouse" "speaking to a man whom we had earlier identified as the decedent's uncle."[3] McNeil stated he brought the issue to his trial counsel's attention but trial counsel refused to inform the district court. In its summary dismissal order, the district court relied on *Remmer v. United States*, 347 U.S. 227 (1954) and *Godoy v. Spearman*, 861 F.3d 956 (9th Cir. 2017) (en banc) and concluded McNeil's allegations "failed to describe the juror's contact with [the victim's] relative so that a presumption of prejudice arose."

On appeal, McNeil does not challenge the district court's reliance on *Remmer* and *Godoy*. Instead, he somewhat inconsistently argues that "the district court used the wrong standard to evaluate prejudice" but that *Remmer* and *Godoy* support his assertion he made a prima facie showing sufficient to avoid summary dismissal. The State also relies on *Remmer* and *Godoy* on appeal but argues these cases support the opposite conclusion, i.e., that McNeil's allegations fail to show prejudice.

In *Remmer*, the petitioner was convicted of tax evasion and learned after the verdict that during trial an unnamed individual had told the jury foreman that he "could profit by bringing a verdict favorable to the petitioner." *Remmer*, 347 U.S. at 228. During trial, the juror reported

---

[3]      Again relying on *Bias*, McNeil argues this allegation alone requires an evidentiary hearing on his claim. For the reasons stated in footnote 2 above, we decline to interpret *Bias* in this manner.

10

the incident to the judge, who informed the prosecuting attorneys, and the Federal Bureau of Investigation investigated the matter and prepared a report. *Id.* The judge and the prosecuting attorneys considered the report and "apparently concluded that the statement to the juror was made in jest." *Id.* Neither the prosecutor nor the judge ever informed the petitioner about the incident. *Id.* After the verdict and after reading about the incident in the newspapers, the petitioner moved for a new trial, which the district court denied, and the court of appeals affirmed this denial. The United States Supreme Court reversed. In doing so, it ruled:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial *about the matter pending before the jury* is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Id.* at 229 (emphasis added). The Court remanded for a hearing to determine whether the incident was harmless or warranted a new trial. *Id.* at 230.

In *Godoy*, an alternate juror provided an uncontroverted, sworn declaration that a seated juror communicated continuously about the case from the time of jury selection until verdict with a friend who was a judge and would communicate the judge's responses to the jury. *Godoy*, 861 F.3d at 960. Addressing this juror misconduct, the Ninth Circuit outlined the framework under *Remmer* for analyzing a claim that improper, outside influence of a juror deprived a defendant of due process:

> [W]hen faced with allegations of improper contact between a juror and an outside party, courts apply a settled two-step framework. At step one, the court asks whether the contact was possibly prejudicial, meaning it had a tendency to be injurious to the defendant. If so, the contact is deemed presumptively prejudicial and the court proceeds to step two, where the burden rests heavily upon the state to establish the contact was, in fact, harmless. If the state does not show harmlessness, the court must grant the defendant a new trial. When the presumption arises but the prejudicial effect of the contact is unclear from the existing record, the trial court must hold a hearing to determine the circumstances of the contact, the impact therefore upon the juror, and whether or not it was prejudicial.

*Id.* at 959 (quotations, citations and brackets omitted). Regarding proof of prejudice, the Ninth Circuit ruled threadbare or speculative allegations of misconduct are insufficient to trigger a presumption of prejudice as are allegations involving "prosaic kinds of jury misconduct" such as

11

a chance contact between a witness and a juror in the hallway or the elevator. *Id*. at 967. Rather, "[t]he defendant must present evidence of a contact sufficiently improper as to raise a credible risk of affecting the outcome of the case." *Id*.

McNeil fails to meet this standard. The only evidence of juror misconduct McNeil offers is his own statement that he saw a male juror "speaking to a man whom we had earlier identified as the [victim's] uncle." Unlike the facts in *Remmer* and *Godoy*, there are no specifics about this contact. Importantly, no evidence supports that the juror and the victim's alleged uncle were communicating about "the matter pending before the jury" as distinguished from a chance encounter. *See Remmer*, 347 U.S. at 229 (ruling communication with juror during trial "about the matter pending before the jury" is presumptively prejudicial). Likewise, McNeil's bare bones allegations are distinguishable from *Turner v. Lousiana*, 379 U.S. 466, 472 (1965), on which McNeil also relies. In *Turner*, the petitioner offered evidence of "continuous and intimate association" between the jurors and two law enforcement witnesses as prejudice. In contrast, McNeil's allegations do not raise a credible risk of having affected the jury's guilty verdict.

Finally, we disagree with McNeil that the district court erred "by dismissing his claim on a new basis than provided in its notice of intent." McNeil argues that the only basis the district court offered for dismissal in its notice of intent was "McNeil's failure to provide evidence to support [his claim]" but then the court "dismissed his claim for a different reason: failure to show prejudice." Contrary to McNeil's argument, however, the district court set forth the two-prong test of deficient performance and prejudice established in *Strickland* for determining ineffective assistance of counsel, gave McNeil notice he failed to support such a claim, and dismissed his claim for failure to show prejudice. Based on this record, we cannot conclude the district court did not give McNeil adequate notice.

Moreover, the State argued in support of its motion for summary dismissal that McNeil had failed to raise genuine issues of material fact regarding both deficient performance and resulting prejudice, specifically stating McNeil had "not provided admissible evidence to overcome [*Strickland*'s] presumption and, even if he had, he has not demonstrated that the outcome of his case would be different." Accordingly, the district court summarily dismissed McNeil's claim in part on the State's insufficiency arguments. As a result, McNeil had adequate notice of the grounds for dismissal. *See Kelly*, 149 Idaho at 523, 236 P.3d at 1283 ("When a trial

court summarily dismisses an application for post-conviction relief based *in part* on the arguments presented by the State, this is sufficient to meet the notice requirements.").

## IV.
## CONCLUSION

McNeil fails to show the district court erred in dismissing his claims that his trial counsel provided ineffective assistance of counsel. Consequently, the district court's order summarily dismissing McNeil's second amended petition for post-conviction relief is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.