**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50098**

| | |
|---|---|
| **DAVID J. WHITECOTTON,** ) | |
| ) | **Filed: October 2, 2025** |
| **Petitioner-Appellant,** ) | |
| ) | **Melanie Gagnepain, Clerk** |
| **v.** ) | |
| ) | **THIS IS AN UNPUBLISHED** |
| **STATE OF IDAHO,** ) | **OPINION AND SHALL NOT** |
| ) | **BE CITED AS AUTHORITY** |
| **Respondent.** ) | |
| ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Power County. Hon. Javier L. Gabiola, District Judge. Hon. Rick Carnaroli, District Judge.

Judgment of the district court summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

David J. Whitecotton appeals from the district court's judgment summarily dismissing his petition for post-conviction relief. Whitecotton claims his trial counsel was ineffective for failing to properly argue the alleged violation of his civil rights and that his petition was sufficient to show a prima facie case for post-conviction relief. Whitecotton argues the district court erred in summarily dismissing his petition because the reason given by the district court was affirmatively disproved by his affidavit. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

This Court summarized the material facts in the direct appeal of the underlying criminal case as follows:

In response to the citizen's report, an officer was dispatched to the pharmacy. The officer observed a vehicle with Oregon license plates matching the one reportedly associated with Whitecotton. The officer parked his patrol vehicle in a parking spot several feet away and approached Whitecotton's vehicle on foot. The officer made contact with Whitecotton, who was sitting in the driver's seat of the vehicle, and began a conversation with him. The officer told Whitecotton that "somebody called and said [he] was acting really weird." As the officer told Whitecotton about the call, Whitecotton started his vehicle and said something in response, which was inaudible over the vehicle's engine noise. The officer responded: "What was that? Talk to me for a minute. Turn that off." Whitecotton complied. During the ensuing conversation, the officer asked Whitecotton about the kind of gun he had and why he had been in the store. Whitecotton said he was buying a football for a kid. The officer then asked Whitecotton for his driver's license. When Whitecotton responded by asking the officer whether he had "cause for this," the officer explained that he would get out of Whitecotton's "hair in a minute," but the officer wanted to know who he was talking to. Whitecotton could not produce a driver's license, but eventually provided an identification card. When asked where he lived, Whitecotton stated that he lived in Oregon, was staying in a nearby motel, and was "just passing through." During the course of the interaction, the officer reiterated that he made contact with Whitecotton because of the citizen's report. The officer advised that he did not think Whitecotton was doing anything "wrong" and that the officer planned to indicate in his report that he spoke with Whitecotton.

When the officer ran Whitecotton's name through dispatch, he learned that Whitecotton's driving privileges were revoked due to a felony driving under the influence conviction in Oregon. Although the officer detected a slight odor of alcohol on Whitecotton's breath, Whitecotton denied consuming any alcohol that day. Because the check revealed no other pending charges or holds, the officer released Whitecotton after admonishing him not to drive. Whitecotton thanked the officer, and the officer told Whitecotton to let the officer know if Whitecotton needs anything and to try not to "scare people."

After returning to his patrol vehicle, the officer observed Whitecotton back out of his parking space and begin driving away despite the officer's clear admonition moments before that Whitecotton could not legally drive, and his agreement that he would not. The officer pursued Whitecotton, who pulled into another parking spot just before entering the roadway. Upon reinitiating contact with Whitecotton, the officer informed Whitecotton that he could not legally possess a firearm due to his status as a convicted felon. The officer requested that Whitecotton relinquish his firearm. He refused and fled in his vehicle. Whitecotton then led officers on a slow-speed chase. During the chase, dispatch notified the officer that Whitecotton had cautions for weapons charges against officers and domestic violence. Despite being pursued by more than one law enforcement vehicle with active sirens and emergency lights, Whitecotton did not stop until he reached the motel where he was staying. After pulling into the hotel parking lot, Whitecotton exited his vehicle while no longer wearing the gun holster.

Whitecotton initially disregarded repeated commands from armed officers to raise his hands and surrender, but was ultimately arrested without further incident.

*State v. Whitecotton*, Docket No. 45755 (Ct. App. Feb. 2020) (unpublished). Whitecotton was charged with unlawful possession of a firearm. Whitecotton filed a motion to suppress, arguing that all evidence obtained, and statements made as a result of an illegal traffic stop and seizure without probable cause, should be suppressed pursuant to the Fourth Amendment to the United States Constitution. The district court denied the motion to suppress, holding that the seizure was supported by reasonable suspicion. This Court, finding no Fourth Amendment violation, affirmed the decision of the district court. *Id*.

Whitecotton filed a petition for post-conviction relief and, in his amended petition, asserted that his trial attorney was ineffective "by not fighting hard enough to let the court know about the violation of [his] civil rights when [he] was stopped and questioned outside of the drug store in American Falls." The district court summarily dismissed Whitecotton's "civil rights" claim, noting that Whitecotton had not identified which civil right he believed was violated and had not framed an issue that might show his trial counsel's performance was deficient or that any such deficiency prejudiced his case. Whitecotton filed a motion for reconsideration pursuant to Idaho Rule of Civil Procedure 60(b), asserting that he had inadvertently failed to properly submit an affidavit for the district court's consideration. The district court ultimately reconsidered the claims as if the affidavit was attached to the amended petition and denied the motion for the same reasons set forth in its original summary dismissal decision. Whitecotton appeals.

## II.

## STANDARD OF REVIEW

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

Whitecotton claims that the district court erred in summarily dismissing his amended petition for post-conviction relief. Whitecotton contends that his trial counsel was ineffective for

3

failing to properly pursue a civil rights violation as a basis for suppression of evidence and that the district court's findings are clearly erroneous in light of his affidavit submitted with his motion for reconsideration.

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades*, 148 Idaho at 249, 220 P.3d at 1068; *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

4

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

Regarding Whitecotton's civil rights claim, the district court found that Whitecotton's amended petition was only supported by "conclusory allegations that do not frame a genuine issue of material fact as to whether his counsel's performance was deficient and/or that a material issue of fact exists as to whether the claimed deficiency (failure to argue 'the violation of his civil rights') prejudiced his case." In addition, the district court stated that Whitecotton "has simply not identified which civil right he believes was violated and has not framed an issue that might show that his attorney's performance was deficient." Whitecotton argues that the district court's findings that Whitecotton failed to identify which civil right was violated and that he failed to frame an issue that might show his attorney's performance was deficient are clearly erroneous.

Whitecotton claims that he raised a civil rights violation by alleging that the officer unlawfully prolonged his detention after the reasonable suspicion the officer initially possessed dissipated. Whitecotton argues that since neither the reporting party nor the officer had observed him commit a crime, once the officer ascertained that he was not a threat or danger to himself or others, the officer had no reason to question Whitecotton further, demand identification, or conduct

further investigation into his court records. Whitecotton asserts that his civil rights claim has been properly raised as a violation of his Fourth and Fourteenth Amendment rights.

As an initial matter, Whitecotton attempts to mislead this Court in the assertion on appeal that the unlawfully prolonged detention claim was raised by Whitecotton's post-conviction counsel's arguments in opposition to the State's motion for summary dismissal. Whitecotton quotes from the argument "[t]here's a specific claim that that issue was not fully explored in the trial court," and suggests that the claim refers to the unconstitutional prolonged detention claim. Yet, the reference was to a generalized statement of Whitecotton's claims and the summary dismissal standards. Nonetheless, Whitecotton attempts to bolster the assertion by referring to post-conviction counsel's arguments that "further questioning by the officer when he was--never presented a threat or a danger to himself, did violate his Fourth Amendment rights" and that "his attorney could have made arguments and should have made arguments regarding the Fourth Amendment. That's the basis for the claim that his constitutional rights were violated." However, these arguments were made in regard to "the second issue, his attorney did not raise the issue of his--of the violation of his civil rights *at trial*." (Emphasis added.) The argument clearly relates to a separate claim that trial counsel was ineffective for failing to present evidence to the jury, not ineffective for failing to raise a suppression issue prior to trial:

> So, our argument here is that if the jury had the entire picture, not simply what [counsel] would have the jury focus on--that was he a (sic) convicted felon at this point in time and did he possess a firearm at this point in time--if the jury had seen this further questioning by the officer when was--never presented a threat or a danger to himself, did violate his Fourth Amendment rights, that it may have impacted the jury's assessment of the evidence and the entire case, and they would have--and his attorney could have made arguments and should have made arguments regarding the Fourth Amendment. That's the basis for the claim that his constitutional rights were violated, that had the jury been able to assess the impact of his Fourth Amendment rights from the illegal continuation of the seizure of Mr. Whitecotton and his 14th Amendment right regarding his treatment by the officer when the officer came back subsequently to confront him a second time, that the jury's verdict may, in fact, have been different.

These statements do not support the assertion that Whitecotton raised an ineffective assistance of counsel claim relative to the failure to assert an unconstitutionally prolonged detention claim as a basis for suppression of evidence.

As noted, Whitecotton filed his affidavit after the district court initially dismissed his post-conviction petition. As relevant here, Whitecotton claimed:

> My attorney did not fight hard enough to let the court know about the violation of my civil rights when I was stopped and questioned outside of the drug store in American Falls. There were no allegations that I had committed a crime by the lady witness or even by the officer when he first contacted me. What the citizen reported was not actually a "crime" and did not warrant such unconstitutional intrusion. Also, once he ascertained that I was not a threat or danger to self or others he had no reason to question me further, or demand identification, or to conduct further investigation into my court records. I believe this was ineffective assistance of counsel because my attorney did not protect my 4th Amendment or 14th Amendment rights regarding my treatment by the officer in this encounter.

The district court considered the affidavit and found:

> Viewing the factual matters raised in the affidavit in a light most favorable to the Petitioner, the affidavit simply does not create a genuine issue of material fact when viewed in the context of the entire record of the case. The attachments are replete with conclusory allegations, unsupported by admissible evidence and Petitioner's conclusions of law. Summary dismissal was appropriate, and the Court will not disturb its previous ruling.

The only other argument made by post-conviction counsel at the hearing on the motion for summary disposition, which is even potentially relevant, again involved what post-conviction counsel termed as Whitecotton's "second claim" that trial counsel violated his rights by refusing to allow him to testify and tell the jury that his rights were violated by his interaction with the officer. Whitecotton's post-conviction counsel argued that trial counsel failed to inform the jury that Whitecotton was "simply a citizen minding his own business, never gave rise to any reason to conduct the investigation." Post-conviction counsel linked this argument to the claims in Whitecotton's affidavit that the officer had no business with his continued interaction with Whitecotton, which violated his constitutional rights. As the State argues, Whitecotton's efforts on appeal to separate his underlying civil rights claim into a violation of his constitutional rights by failing to present evidence of the alleged wrongful interaction to the jury *and* violation of his constitutional right by failing to argue that his detention was unlawfully extended is not supported by the record.

Even so, Whitecotton failed to raise a genuine issue of material fact regarding a claim that trial counsel was ineffective for failing to argue that Whitecotton's detention was unlawfully extended. In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted ineffective

7

assistance. *Lint v. State*, 145 Idaho 472, 477, 180 P.3d 511, 516 (Ct. App. 2008). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Lint*, 145 Idaho at 477-78, 180 P.3d at 516-17.

As set out in his affidavit, Whitecotton contends that since neither the reporting party nor the officer observed him actually commit a crime, once the officer "ascertained that [Whitecotton] was not a threat or danger to self or others he had no reason to question [him] further, or demand identification, or to conduct further investigation into [his] court records." Appellate counsel argues:

> In other words, Mr. Whitecotton was asserting his trial attorney should have argued for suppression based on the theory that the officer had unlawfully prolonged the detention after the reasonable suspicion he initially possessed had dissipated, and that the evidence uncovered during the prolonged questioning, including Mr. Whitecotton's identity, should be suppressed.[1]

First, this Court held on the direct appeal challenging the denial of the motion to suppress that the officer did not violate the Fourth Amendment by the interaction "to investigate and identify" Whitecotton under the circumstances. *Whitecotton*, Docket No. 45755 (Ct. App. Feb. 2020) (unpublished). Whitecotton produced only an identification card instead of a driver's license, which the officer ran through dispatch. Second, Whitecotton does not identify any other "prolonged questioning." Third, Whitecotton was released from the initial seizure after the officer ran his identification card through dispatch. This Court determined Whitecotton's initial seizure was supported by reasonable suspicion. It was not until after Whitecotton drove away, after being told he was not legal to drive, that the officer arrested him. Other than conclusory statements that the interaction with the officer was somehow prolonged after the initial detention, Whitecotton fails to point to any basis to conclude that the reasonable suspicion for the initial detention dissipated at some point prior to his release or that any suppressible information was obtained in that theoretical time period. Whitecotton's conclusory argument does not, as the district court found, raise a genuine issue of material fact to support the asserted unlawfully prolonged detention claim made on appeal.

---

[1] For this proposition, appellate counsel provides an "accord" cite to the transcript from the hearing on the motion for summary disposition, quoted above, regarding the failure of counsel to argue to the jury that his civil rights were violated.

**IV.**

**CONCLUSION**

Whitecotton fails to demonstrate that the district court erred in summarily dismissing his petition for post-conviction relief.  Therefore, the district court's judgment summarily dismissing Whitecotton's petition for post-conviction relief is affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.